# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

| | | |
|---|---|---|
| Wells Fargo Bank, N.A., as Trustee | ) | |
| for the Registered Holders of Merrill | ) | |
| Lynch Mortgage Trust 2005-LC1, | ) | |
| Commercial Mortgage Pass-Through | ) | |
| Certificates, Series 2005-LC1, | ) | |
| By and through | ) | No. 2:16-cv-11364 |
| LNR Partners, LLC, its special servicer, | ) | |
| | ) | Hon. George Caram Steeh |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| REMY & ASSOCIATES, L.L.C., a Michigan | ) | |
| limited liability company, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |

## DECLARATION OF ANA G. CASTRO OF LNR PARTNERS, LLC IN SUPPORT OF PLAINTIFF'S MOTION FOR APPOINTMENT OF A RECEIVER,  AND FOR PRELIMINARY RELIEF

I, Ana G. Castro, declare (the "Declaration"), pursuant to 28 U.S.C. § 1746, as follows:

1.  I am an Asset Manager with LNR Partners, LLC ("LNR Partners").

2.  As a result of my work for LNR Partners, I am personally familiar with the Mortgaged Property at issue in this case.[1]

---

[1] All capitalized terms not defined herein have the meanings ascribed to them in the Plaintiff's Ex Parte Motion for Appointment of a Receiver and for Preliminary Relief and the accompanying brief in support of that motion [Dkt. No. 2].

3.      Except as otherwise stated, all facts set forth in this Declaration are based on my personal knowledge, my discussions with representatives of the Borrower, my review of relevant documents, or my opinion, based on my experience and knowledge of the Mortgaged Property's operations and financial conditions. Except as otherwise noted, I have personal knowledge of the matters set forth in this Declaration and, if called as a witness, could testify competently to such matters.

4.      The Loan defaulted in October 2015. Borrower has not remitted any monthly cash flows for the Mortgaged Property since February 2016.

5.      There is no lockbox or other method by which LNR Partners or Plaintiff captures the revenue from the Mortgaged Property.

6.      The Mortgaged Property is in need of repairs totaling approximately $600,000.00, including a new roof.

7.      The Mortgaged Property is only 62% occupied.

8.      At the origination of the Loan in 2005, there were environmental issues which were to be remediated, as a result of dry cleaner operations located on the Mortgaged Property. Approximately $320,000 was placed in a reserve account to pay for the remediation expenses (the "Environmental Reserve").

9.      After the Loan matured in November 2015 without being paid off, I reviewed the file and found that it did not have information confirming that the remediation had been completed.  A request for the documentation was made through Borrower's representative.

2

10.     A formal demand letter was sent by LNR Partners' counsel requesting documents related to the remediation documents was sent to both the Borrower and the dry cleaner tenant, but did not receive any response.

11.     After counsel and I both requested documents from the Borrower, the only documents I received were a letter from 2012 (the "2012 Letter") and Phase 2 Environmental Report dated April 14, 2011 (the "Phase 2") (both attached hereto as Exhibit 1).

12.     LNR Partners also asked to speak Borrower's environmental consultant who was involved with the Mortgaged Property, but has not received any communication from the consultant.

13.     The Phase 2 indicated that there are recommended further remedial actions to be taken, including: (1) continued quarterly monitoring of existing groundwater wells; (2) compliance with any "Due Care" obligations imposed by federal and/or state law; and (3) off-site monitoring should continue to identify the leading edge of the groundwater plume and determine the impact, which could presumably result in further remedial measures being needed. Phase 2, p. 15.

14.     The Borrower stated in the 2012 Letter that it provided the Phase 2 to the Michigan Department of Environmental Quality ("MDEQ") in April 2011. The Borrower further represented that the MDEQ indicated to it that it was willing to issue a No Further Action ("NFA") Letter, based on the Phase 2. *See* 2012 Letter, page 3. The Borrower

3

sought a return of the Environmental Reserve conditioned upon its receipt of the NFA Letter from the MDEQ. *Id*.

15.    The Borrower never provided the NFA Letter, despite LNR Partners' requests for the documents relating to the environmental work at the Mortgaged Property.

16.    To the best of my knowledge, the Borrower has not further sought a return of the Environmental Reserve after the 2012 Letter.

17.    As of the date of this Declaration, neither LNR Partners nor the Plaintiff has received the NFA Letter, or any documentation from the State of the Michigan concerning the Mortgaged Property, or any information about the remediation which may have been completed at the Mortgaged Property.

18.    Neither LNR Partners nor the Plaintiff has any information to indicate that the recommendations in the Phase 2 have been carried out since 2011.

19.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct to the best of my knowledge.

20.    Executed this 3rd day of May, 2016, at Miami, Florida.

4827-8296-4017.3

Ana G. Castro
Asset Manager
LNR Partners, LLC

5

4827-8296-4017.3