UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

| | |
|---|---|
| Wells Fargo Bank, N.A., as Trustee for the Registered Holders of Merrill Lynch Mortgage Trust 2005-LC1, Commercial Mortgage Pass-Through Certificates, Series 2005-LC1, By and through LNR Partners, LLC, its special servicer, <br><br> Plaintiff, <br><br> v. <br><br> REMY & ASSOCIATES, L.L.C., a Michigan limited liability company, <br><br> Defendant. | No. 16-cv-11364 <br><br> Hon. George Caram Steeh |

## ORDER APPOINTING RECEIVER AND OTHER RELIEF

Plaintiff Wells Fargo Bank, N.A., as Trustee for the Registered Holders of Merrill Lynch Mortgage Trust 2005-LC1, Commercial Mortgage Pass-Through Certificates, Series 2005-LC1 ("Wells Fargo" or "Plaintiff") filed a verified complaint in this action seeking the appointment of a receiver over certain real property located in Rochester Hills, Oakland County, Michigan (the "Complaint"). This Court having reviewed Plaintiff's Complaint and *Ex Parte* Motion for

Appointment of a Receiver and for Preliminary Relief (the "Motion"), having reviewed objections, by Defendant thereto, and being fully advised in the premises;

IT IS ORDERED THAT:

This Order should be entered to protect the respective parties' respective interests in the Mortgaged Property (defined below) and income therefrom as follows:

1. Plaintiff's Motion seeking appointment of a receiver is GRANTED.

2. NAI Farbman (the "Receiver") is appointed as the Receiver over the "Mortgaged Property," which means:

   a. The shopping center located in Rochester Hills, Oakland County, Michigan ("Mortgaged Property"), on which Plaintiff holds a Mortgage and which is more fully described in the Mortgage, a copy of which is attached to Plaintiff's Complaint in this matter and incorporated by reference, together with all buildings, structures, and improvements on the Mortgaged Property;

   b. All fixtures of every kind or nature located in or upon or attached to, or used or intended to be used in connection with, the operation of the Mortgaged Property;

   c. All of the collateral and assets of Defendant, as described in the Mortgage attached to Plaintiff's Complaint including, but not limited to, all machinery, apparatus and equipment, materials, supplies, articles of personal property used in connection with or with the operation of the Mortgaged Property;

   d. All the cash, rent, royalties, issues, revenues, income, profits and other benefits of the Mortgaged Property and the facilities thereon as more particularly described in the Assignment of Leases and Rents filed with the

4829-9685-3808.2

      Complaint, under present or future contracts, occupancy agreements, agreements for reimbursement, or otherwise, together with all accounts due or to become due as income in connection with the operations of the Mortgaged Property ("the Rents") all as more fully described in the Mortgage and Loan Documents attached to Plaintiff's Complaint, as defined therein;

 e. All permits, licenses and other contracts pertaining to the Mortgaged Property and the operations of the Mortgaged Property;

 f. All books, records, accounts or documents which in any way relate to the Mortgaged Property, the Rents, or the operations of the Mortgaged Property, and copies of all documents Defendant is legally obligated to retain;

 g. All other property, estate, right, title and interest as described in the Mortgage and the other Loan Documents attached to and referred to in Plaintiff's Complaint; and

 h. All bank accounts maintained by Defendant concerning the Mortgaged Property, including any operating accounts, escrow accounts, insurance-proceed accounts, cash management accounts, and/or security deposit accounts.

3. The Receiver will manage the day-to-day operations of the Mortgaged Property.

4. Defendant and its officers, directors, employees, partners, trustees, agents, representatives and/or any entity controlled by Defendant are directed to cooperate with the Receiver in the transition of the management of the Mortgaged Property and shall make immediately available to the Receiver all of Defendant's records concerning the Mortgaged Property, including the Defendant's EIN, so that

the Receiver may adequately account for any revenue collected or owing through the date the Receiver is appointed, including, but not limited to, all:

    a.    Leases including communication/correspondence files;

    b.    A current rent-roll as well as tenant contact names and telephone numbers;

    c.    A current aged accounts receivable/delinquency report;

    d.    The occupant ledgers;

    e.    Documents identifying and summarizing all pending litigation;

    f.    All operating licenses;

    g.    Documents pertaining to all pending new leases/renewals;

    h.    All existing service contracts;

    i.    All pending bids for contractor work;

    j.    Copies of all on-site employee payroll records and employee files and applications to include number of employees on health or dental program by coverage (single, single plus, or family coverage), gender and age of each employee;

    k.    All documents, books, records and computer files and records concerning the rents, profits, finances, issues, and operation and management of the Mortgaged Property, including, but not limited to, accounts with any financial institutions;

    l.    Such other records pertaining to the management of the Mortgaged Property as may be reasonably requested by the Receiver;

    m.    All keys, access keys, cards, codes and passwords;

4829-9685-3808.2

n.  All security deposits, security deposit accounts and an accounting for all security deposits;

o.  A list of all utilities and utility accounts;

p.  All insurance policies for the Mortgaged Property;

q.  Correspondence relating in any way to the Mortgaged Property;

r.  Surveys, site plans, specifications, floor plans, drawings, measurements, etc.;

s.  Documents identifying and summarizing existing litigation (excluding this action);

t.  All documents, books, records and computer files, computer equipment, software, management files, equipment, furniture, appliances, vending machines, supplies of Defendant, websites, social medial accounts (including but not limited to Facebook, Twitter, or Instagram), other online accounts, online services, and email accounts, and all passwords needed to access all software, websites, email accounts, social media and other online accounts, and computer files, e-mail accounts maintained at the on-site management office(s) (and all off–site financial records) of Defendant including the office at the site including, but not limited to, all records concerning all Mortgaged Property income and revenue and the operation and management of the Mortgaged Property, including but not limited to access information, if any, to operate the systems of the Mortgaged Property (*i.e.*, security system, communication systems; HVAC control systems, etc.). To the extent that any of the foregoing computer files, software and/or information is maintained at an off-site location, or on a computer system not owned by Defendant, or is otherwise stored in a manner that the Receiver cannot have unrestricted access, based on security or confidentiality concerns of Defendant and any related entity, relating to non-Defendant property,

5

          information, software or licensing limitations, Defendant shall provide an accurate list of all such information which is maintained in off-site locations, or on a computer system not owned by Defendant, or otherwise in a form or manner that cannot be made completely available to the Receiver. To the extent that any of the software utilized by Defendant or related entities cannot be used by the Receiver, Defendant shall take all action reasonably necessary to extract data requested by the Receiver from the applicable software programs and make copies of such information available to the Receiver;

     u.    All information relating to tax appeals including files, attorney retainer agreements and pleadings; and

5.    The release of employee payroll records and files, described in Paragraph 3(j) above, to the Receiver is authorized by this Order.

6.    Immediately upon entry of this Order, the Receiver has the authority to operate the Mortgaged Property.

7.    Defendant and any third parties receiving notice of this Order shall also surrender to the Receiver all monies that they currently or later possess (and/or that is or becomes subject to their control) which to their actual knowledge constitutes revenue, profits, Rents and/or income collected from the operation of the Mortgaged Property, including any money held in accounts maintained by Defendant at any financial institution that has originated from the Mortgaged Property.

8. Immediately upon entry of this Order and continuing until expiration or termination of the receivership, the Receiver is authorized to take any and all actions the Receiver deems reasonable and appropriate to take possession of, to exercise full control over, and to prevent waste and to preserve, manage, maintain, secure, and safeguard the Mortgaged Property, including, but not limited to, all cash on hand, bank accounts, credit card receipts and other credit and charge card documents, bank deposits, utility deposits, contract deposits, other cash collateral, payment and performance bonds, as well as all Mortgaged Property, and take such other actions as may be necessary and appropriate to take possession, to exercise full control, to prevent waste and to preserve, secure and safeguard the receivership property, including taking possession of and copying, if necessary: all books, records, notes, memoranda, loan documents, deeds, bills of sale, canceled checks, check ledgers, calendar notes, diary notes, notes, records, ledgers, electronically stored data, tape recordings, computer discs, or any other financial documents or financial information in whatever form belonging to Defendant that relate to the Mortgaged Property. Without limiting the generality of the foregoing, the Receiver shall:

> a. Take all action determined by the Receiver to be necessary or appropriate to safeguard and preserve all tangible and intangible assets of the Mortgaged Property and all licenses used in connection with the operation of the Mortgaged Property;

b. Collect all revenues, profits, income, Rents, and issues from the Mortgaged Property;

c. Allow the Plaintiff and its counsel access to the Mortgaged Property at reasonable times to inspect the Mortgaged Property and all books and records thereof;

d. Collect any unpaid or delinquent rents, revenues, issues, profits and other uncollected receivables pertaining to the Mortgaged Property, including, but not limited to, any and all recoveries, awards, and other payments in connection with any litigation with respect to the Mortgage Property, regardless of when accrued, and to prosecute eviction proceedings;

e. Enforce, terminate, or approve any contracts and/or agreements regarding the Mortgaged Property, subject to Plaintiff's approval;

f. Accept or reject executory contracts;

g. Retain, hire, or discharge on-site employees;

h. Establish pay rates of on-site employees and to pay all withholding taxes regarding such employees that accrued after the entry of this Order;

i. Manage, maintain and operate the Mortgaged Property, including without limitation, the payment from funds received as Receiver of all of the following (collectively the "Operating Expenses"): (i) all ordinary and necessary operating expenses arising from the operation by the Receiver of the Mortgaged Property for the period after entry of this Order until expiration or termination of the receivership; (ii) all current real and personal property taxes and assessments (and delinquent taxes, with the prior written consent of Plaintiff); and (iii) all premiums of hazard, liability and other insurance policies upon the Mortgaged Property for term of the receivership;

8

j.  Market the Mortgaged Property for sale through a related entity; and Plaintiff and/or Receiver shall file a motion in this Court seeking approval in the event that the Receiver seeks to enter into any purchase agreements for the sale of the Mortgaged Property;

k.  Access any accounts maintained by Defendant at any financial institution with funds that originated from the Mortgaged Property;

l.  Open new bank accounts in the name of the Receiver as necessary to carry out the obligations of the Receiver hereunder, and be added to any accounts of Defendant relating to the Mortgaged Property;

m.  Endorse any and all checks that Receiver may receive that are payable to Defendant and which represent payment of amounts due and owing in connection with the operation of the Mortgaged Property; and

n.  Retain professionals including attorneys and accountants and replace attorneys and accountants in the Receiver's discretion.

However, the Receiver shall not be responsible for the preparation and/or filing of any income tax returns on behalf of the Defendant.

9.  The Receiver shall receive reasonable compensation for its services, payable from the funds collected from operation of the Mortgaged Property. The Receiver shall receive as reasonable compensation:

- A receivership fee of $750 per month;

- A monthly management fee equal to the greater of $1,750 per month or 3.25% of effective gross income;

- Leasing commissions equal to 6% of aggregate base rent for years 1 – 5, 3% for years 6 – 10;

- A fee for renewals equal to 2.5% of aggregate base rent.

- The Receiver shall not be entitled to compensation for: (a) travel expenses; (b) senior management presence on-site; (c) coordination of receivership services, such as filing receivership reports with the court or appearing in court in connection with the case;

- The Receiver shall not be entitled to a disposition fee to coordinate the sale of the Mortgaged Property if such a sale occurs.

10. Defendant and third parties receiving notice of this Order shall cooperate with the Receiver in obtaining all insurance relating to the operation and management of the Mortgaged Property, including but not limited to fire, extended coverage, property damage, general and professional liability, and workers' compensation. The Receiver shall be named as an additional insured on all such policies. The Receiver shall have the right to possess and control all of Defendant's right, title and interest in and to all proceeds from any claims made or to be made under any insurance policy maintained by Defendant with respect to the Mortgaged Property.

11. Should the Receiver not have sufficient funds to pay all of the Operating Expenses for the Mortgaged Property, Plaintiff may, in its sole

discretion (without being under any obligation to do so except as to the Receiver's compensation and payment for professionals described in Paragraph 9), advance its own funds to pay such Operating Expenses as Plaintiff may elect to have paid. The repayment of all such funds advanced by Plaintiff shall be secured by the Mortgaged Property and under the Mortgage. If such funds are advanced by Plaintiff subsequent to any mortgage foreclosure sale, such amounts advanced may be added to Plaintiff's credit bid as and to the extent permitted by applicable law. In the event that the Mortgaged Property is insured under blanket policies maintained by the property manager of the Mortgaged Property, Defendant shall cooperate with the Receiver to obtain separate insurance for the Mortgaged Property.

12. Should the Receiver have funds in excess of the anticipated Operating Expenses, including an appropriate reserve in an amount to be approved by Plaintiff, for the Mortgaged Property, the Receiver shall provide all such funds, on a monthly basis, to Plaintiff. All such funds shall be applied to the amount owed to Plaintiff by the Defendant under the Mortgage for the Mortgaged Property. To the extent that there are any funds that exceed amounts due to Plaintiff under the Loan Documents, such funds shall be subject to further order of the Court.

13. Neither Plaintiff nor the Receiver shall be liable for any claim, obligation, liability, action, cause of action, cost or expense of Defendant or the

Mortgaged Property arising out of or relating to events or circumstances occurring prior to this Order, including without limitation, any contingent or unliquidated obligations and any liability from the performance of services rendered by third parties on behalf of Defendant, and any liability to which Defendant is currently or may ultimately be exposed under any applicable laws pertaining to the ownership, use or operation of the Mortgaged Property and operation of Defendant's business (collectively all of the foregoing is referred to as "Pre-Receivership Liabilities"). Neither the Plaintiff nor the Receiver shall be obligated to advance any funds to pay any Pre-Receivership Liabilities. Notwithstanding the foregoing, with the prior written consent of Plaintiff (but not otherwise), Receiver may pay from funds collected from operation of the Mortgaged Property Pre-Receivership Liabilities in the ordinary course of business and that are not payable to Defendant or Defendant's insiders, affiliates, partners, related companies, parent companies, owners or those entities with common ownership and/or control. No service provider to the Property shall refuse to provide service to the Property on account of any Pre-Receivership Liabilities. The Receiver shall not be responsible for any security deposit refunds for which the Defendant has not transferred the appropriate funds.

    14.    The Receiver shall submit to this Court for its *in-camera* inspection and serve on the parties who have filed appearances a monthly accounting of all

receipts and disbursements concerning the performance of its duties under this Order, and a final accounting within 90 days after termination of the receivership.

15. The Receiver may resign upon thirty days written notice or sooner upon a motion for cause. The Receiver may be removed from duties under this Order upon a motion for cause. If the Receiver is removed or resigns, the Receiver shall turn over to Plaintiff or its designee all of the Mortgaged Property unless otherwise ordered by the Court.

16. The Receiver shall submit a final accounting for approval by the Court within ninety days after the termination of the receivership or the Receiver's removal or resignation.

17. The Receiver shall have the power to enter into, modify, extend, terminate, and/or enforce leases and other contracts, and charge and collect rent in connection with the Mortgaged Property in the ordinary course of business; provided, however, in so doing the Receiver shall not concede, settle, compromise or pay any Pre-Receivership Liabilities in excess of $5,000.00 without written consent of Plaintiff and Defendant.

18. The Receiver and its employees, agents and attorneys shall have no liability in connection with any liabilities, liens or amounts owed to any of Defendant's creditors because of its duties as receiver. Nothing in this Order shall

grant any rights to trade creditors or general unsecured creditors, whose rights shall be solely in accordance with Michigan law.

19. The Receiver and its employees, agents, and attorneys shall have no liability for any claim asserted against it relating to the Receiver's duties under this Order, except for claims due to their gross negligence, gross or willful misconduct, malicious acts and/or the failure to comply with this Court's orders.

20. The Receiver is authorized, in its discretion, to operate the Mortgaged Property under any and all existing agreements that are currently in place between the Defendant and any third party, as well as any of Defendant's plans and specifications, cost estimates, reports, permits, licenses, certificates of occupancy, development rights, warranties, guaranties, telephone exchanges, trademarks, the name of the Mortgaged Property, and any intangible rights relating to the Mortgaged Property.

21. This Court shall retain jurisdiction over this action, the Mortgaged Property and the parties for the purpose of giving such other relief upon proper showing as is consistent with this Order and substantial justice. Unless otherwise ordered by this Court, the receivership shall terminate with respect to any of the Mortgaged Property upon the earliest of: (a) upon sale of the Mortgaged Property; or (b) the expiration of the applicable redemption period following foreclosure of the Mortgaged Property. The Receiver may, from time to time, upon notice to all

parties who have appeared in this action, apply to this Court for further and other instructions and for further powers necessary to enable the Receiver to fulfill its duties under this Order.

22. Until further Order of this Court or until Defendant's interest in the Mortgaged Property is extinguished through foreclosure and the Plaintiff's subsequent possession of the Mortgaged Property, Defendant, its partners, agents and employees, and all other persons with notice of this Order (other than Receiver), are restrained and enjoined from directly or indirectly transferring, encumbering, removing, expending, distributing, concealing, destroying, mutilating, damaging, erasing, altering, disposing of or otherwise diminishing or causing harm to any of the Mortgaged Property, or any part of the Mortgaged Property, all fixtures, machinery, equipment, engines, boilers, incinerators, building materials, appliances, and goods of every nature, and all articles of personal property located in, or on, or used, or intended to be used in connection with the Mortgaged Property, all proceeds from the operations of the Mortgaged Property, including all revenue, income and profits and all documents relating in any way to the Defendant's business practices or finances or the Mortgaged Property. No security is required prior to issuance of this injunction. This Order does not impact or modify Plaintiff's rights to foreclose the Mortgaged Property or Defendant's right of redemption.

23. Except by leave of this Court and except with respect to Plaintiff's claims contained in the Complaint and Plaintiff's right to foreclose its Mortgage on the Mortgaged Property, during the pendency of the receivership, Defendant and all other persons, creditors and entities (other than Plaintiff) are stayed from taking any action to establish or enforce any claim, right or interest for, against, on behalf of, in, or in the name of Defendant, the Receiver, receivership assets, or the Receiver's duly authorized agent acting in their capacities as such, including but not limited to, the following actions:

    a. Commencing, prosecuting, litigating or enforcing suit, except that the actions may be filed to toll any applicable statute of limitations;

    b. Accelerating the due date of any obligation or claimed obligation, enforcing any lien upon, or taking or attempting to take possession of, or retaining possession of, property of Defendant that relates in any way to the Mortgaged Property, or attempting to foreclose, forfeit, alter or terminate any of Defendant's interest in the Mortgaged Property, whether such acts are part of a judicial proceeding or otherwise;

    c. Using self-help or executing or issuing, or causing the execution or issuance of any court attachment, subpoena, replevin, execution or other process for the purpose of impounding or taking possession of or interfering with, or creating or enforcing a lien upon the Mortgaged Property; and

    d. Doing any act or thing to interfere with the Receiver taking control, possession or management of the property subject to the receivership, or to in any way interfere with the Receiver or the duties of the Receiver, or to interfere

with the exclusive jurisdiction of this Court over the Mortgaged Property.

This paragraph does not prevent Plaintiff from commencing litigation that does not relate to the Mortgaged Property, including litigation related to any guaranty or indemnity claims. This paragraph does not stay the commencement or continuation of an action or proceeding by a governmental unit to enforce such governmental unit's police or regulatory power.

24. The Court finds that Plaintiff in seeking to obtain a receiver is engaged in a workout activity, as that term is defined by M.C.L.A. § 324.20101a, and its actions in seeking appointment of a receiver are intended to protect the value and marketability of its collateral. Further, Plaintiff's actions in seeking the appointment of a receiver do not amount to participation in management as that term is defined in CERCLA, 42 U.S.C. § 9601(a)(20).

25. The Receiver shall post a $50,000.00 bond with this Court to secure performance of its duties under this Order.

Dated: May 11, 2016

                                              s/George Caram Steeh
                                              U.S. DISTRICT JUDGE